UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MIRABEL MALLETT,<br><br>       **Plaintiff**,<br>v.<br><br>JADE MORTON-ALEXANDER,<br>In her capacity as president of ATO<br>of Massachusetts,<br>       **Defendant**. | Civil Action No. 1:24-cv-12630-MJJ |

## AMENDED COMPLAINT AND JURY DEMAND

### Introduction

1. This is a claim for defamation brought by the Plaintiff, Mirabel Mallett, that stems from false statements made and published by the Defendant, Jade Morton-Alexander to others, including the executive board members of ATO, a fraternity at Tufts University, and students, alumni, and employees of Tufts University, that Ms. Mallett had caused physical harm to another, was involved in a physical altercation, and had committed a physical assault on another student. These statements are all baseless and, because the statements on their face would tend to injure the Plaintiff's standing in her community, it is defamatory per se.

### Parties

2. Mallett is an individual residing in Cambridge, MA.

3. Morton-Alexander is an individual residing in New York, NY. In 2023, she was president of ATO of Massachusetts, a fraternity at Tufts University, where she lived.

### Jurisdiction and venue

4. Jurisdiction is appropriate in this matter because the claims exceed $100,000, both parties

reside within the Court's jurisdiction, and the actions that gave rise to this lawsuit occurred within the Court's jurisdiction.

5. Venue is appropriate because the actions and harm that give rise to this lawsuit occurred in this venue.

**Facts**

6. Mallett was an undergraduate student at Tufts University who then attended graduate school at Tufts in the fall of 2023.

7. In 2021, she joined ATO of Massachusetts, ("ATO") a fraternity located at 134 Professors Row in Medford, Massachusetts.

8. ATO of Massachusetts is controlled by an executive board, which in June 2023 consisted of 12 members. The board, in turn, is led by its president.

9. In June 2023, ATO's president was the Defendant, Morton-Alexander.

10. Throughout the 2022-2023 school year, Mallett was targeted and bullied by a small group of students, despite her best efforts to make peace with them.

11. On June 1, 2023, Morton-Alexander informed Mallett that she was being expelled from ATO because, according to Morton-Alexander, she had caused physical harm to other members. Morton-Alexander stated that multiple people had reported that Mallett had "physically hurt" fraternity members by pushing them. Morton-Alexander said that she herself had not witnessed the events, but she was instead relying on the reports of others.

12. Morton-Alexander was inconsistent in her allegations and told Mallett that she had physically harmed others, but Morton-Alexander did not know the exact number of complaints.

13. Morton-Alexander instructed Mallett to move out of the fraternity, where she was residing and had expected to continue to reside, by July 1, 2023.

14. Mallett immediately responded that this never happened and that she had no idea what situation these reports could be referring to. She told Morton-Alexander that these reports were, literally, lies, and she needed more information about the accusations in order to demonstrate that they were untrue.

15. Mallett told Morton-Alexander that she was being bullied and that people who did not like her were now using ATO's anonymous complaint form to bully her further.

16. Morton-Alexander responded that she did not witness the events, and that she did not know details, such as the dates when the incidents supposedly occurred.

17. When Mallett asked Morton-Alexander who else she had told of the allegations, Morton-Alexander admitted she had told all 11 of the board members as well as Tufts employees and alumni.

18. Later that day, Mallett and Morton-Alexander spoke again, and this time discussed the allegation about Mallett supposedly leaving the fraternity stove on all night. Mallett showed Morton-Alexander a six-month-old group chat of the individuals involved, with all of them acknowledging that no one knew who had left the stove on, and no one had suggested Mallett was responsible. Given the clear falsity of that claim, Mallett told Morton-Alexander, the other allegations warranted a closer look than simply accepting them as true. Mallett asked again for the date, time, and place where the supposed incidents took place so she could demonstrate that the allegations were likewise untrue.

19. Morton-Alexander would not provide those details and instead responded that she had no training on how to conduct an investigation.

20. Mallett told Morton-Alexander that two people had targeted her for bullying and were now exploiting the anonymous nature of the complaint system to hurt her.

21. Morton-Alexander said that because there were multiple reports, they were most likely true, and that "when it comes to physical harm, [the board doesn't] vote, you just get dropped. And with the details I have gotten, this is where we are."

22. The same day, Mallett spoke with two members of the executive board, who told her that Morton-Alexander had convened a special meeting the day before to discuss the allegations that Mallett had caused physical harm. The board members said Morton-Alexander told them only that Mallett had caused physical harm, but had not said that the harm was only from alleged pushing and that Morton-Alexander had decided on her own to expel Mallett.

23. On June 2, 2023, Mallett spoke with Mary Kate Kelley (Assoc. Director of Student Life, Office of the Dean of Students), who told her Morton-Alexander had told her of the allegations against Mallett and that the fraternity was taking the allegations against her to be accepted truth. Consequently, Kelly told Mallett, the university now had a report of an allegation of a "physical altercation" by her.

24. Ms. Kelley offered to try to arrange a meeting among the three. But Morton-Alexander refused to attend such a meeting.

25. Mallett repeatedly told Morton-Alexander that the allegations were false and that she should have an opportunity to address them. Morton-Alexander did not respond to her requests and refused meetings with Mallett.

26. On June 13, 2023, Morton-Alexander instructed the executive board not to hear Mallett's version of events or even to communicate with Mallett.

27. Without conducting any fact-finding or even attempting to hear from Mallett, the Board expelled Mallett after Morton-Alexander had already expelled her on June 1.

28. On June 23, 2023, Morton-Alexander emailed Mallett the following:

> This letter confirms your discussion with ATO of Massachusetts President, Jade Morton-Alexander, on June 1, during which you were notified of the grounds of the termination of your membership.
>
> As per Section 2.10 of the ATO Constitution, 'a member who causes physical harm to other members or guests of the House will be expelled from the Fraternity and never welcome back at any ATO-sponsored event.'
>
> The ramifications of violating the ATO Code of Conduct and Constitution are unambiguous and immutable. No appellate process exists, nor would one be applicable. Our policy is to take all anonymous reports <u>seriously and as a fact</u>. It is not the responsibility of the ATO Executive Board to investigate claims, to question the reports of members contradicts our ethos to prioritize the safety and comfort of the membership." (underline added)

29. On June 23, 2023, Morton-Alexander texted Mallett and stated Ms. Kelly had told her the meeting with Ms. Kelly and Mallett was unnecessary "due to me talking to alumni and speaking with them about the situation and her saying to speak with the alumni in which they told me it was [sic] necessary to have a conversation with the three of us due to the fact that the grounds of expulsion were valid and told me to tell exec not to speak on the situation".

5

30. The ATO fraternity is closely-knit, and members quickly became aware of Mallett's expulsion and the pretext for that action.

31. This news soon spread throughout the Tufts community, so that students, administrators, and faculty learned of the false allegations against Mallett.

32. Until this, Mallett had never been accused of physical violence or any other infractions at Tufts or anywhere else in her entire life.

33. Mallett graduated *summa cum laude*, was a leader in sports and clubs, served on the executive board of ATO, was president of the Inter-Greek Council, and had always been considered an exemplar of the Tufts community.

34. Throughout June and July, several administrators asked Morton-Alexander to discuss the situation and provide the facts behind the action taken against Mallett, but Morton-Alexander rebuffed the overtures.

35. After Ms. Mallett requested in July 2023 that Tufts University investigate whether ATO had acted appropriately toward her, Tufts conducted a full investigation of the allegations.

36. On September 13, 2023, Brianna Sevigny, Tufts Director of Community Standards stated, after conducting an open investigation that included any individual who may have had an issue with Mallett, that there was no credible basis for any of the allegations that Mallett physically harmed anyone or that she even violated the student code of conduct or any of the University's policies.

37. In October 2023, Tufts Senior Associate Dean of Students Richard DeCapua said his office insisted on policy changes at ATO because of how unfair the process was to Mallett, and that ATO had taken umbrage at Tufts questioning its processes.

38. In October 2023, representatives from the Office of the Dean of Students communicated to

6

ATO leadership that the investigation by that office demonstrated that there was no credible information to support the allegations of physical harm by Mallett.

39. Nevertheless, as a result of Morton-Alexander's widespread reporting of the false allegations, Mallett lost her housing for the academic year and was blacklisted at ATO.

40. Far worse, however, Mallett's formerly sterling reputation in the Tufts community and among alumni has been permanently marred and her professional standing jeopardized.

## COUNT I

### Defamation

41. Mallett repeats and realleges each of the foregoing paragraphs as if explicitly stated herein.

42. Morton-Alexander published a false statement of fact about Mallett which is capable of damaging Mallett's reputation in the community.

43. The false statement charged Mallett with conduct which would tend to injure her in her trade, business or profession.

44. As a result, Morton-Alexander has defamed Mallett and is liable to her for damages.

### PRAYER FOR RELIEF

WHEREFORE, Mallett prays that the Court enter the following relief:

1. Judgment against Morton-Alexander in the full amount of her damages, plus statutory interest and costs.

2. Enter an Order requiring Morton-Alexander to publicly retract the allegations made against Mallett and issue an apology to Mallett.

3. Such other relief as this court deems just and proper.

    Accordingly, Plaintiff Mirabel Mallett demands a trial by jury on the above claims.

Respectfully Submitted,
Mirabel Mallett
By her attorney,


 /s/ Timothy Cornell
Timothy Cornell, BBO #564250
Cornell Dolan, P.C.
Ten Post Office Square, Suite 800 South
Boston, MA 02109
617-850-9036
*tcornell@cornelldolan.com*

Date:   November 1, 2024

## Certification of Service

I certify that this document will be filed through the Court's electronic filing system and that the Defendant will receive notice of this filing through the same system.

/s/ Timothy Cornell
Timothy Cornell

8